RACHEL E. KAUFMAN (CAL BAR NO. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Classes*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PARAMJIT LALLI**, individually on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | **CLASS ACTION COMPLAINT** |
| **FIRST TEAM REAL ESTATE - ORANGE COUNTY**, a California corporation, | **JURY DEMAND** |
| Defendant. | |

This case addresses a disturbing trend whereby real estate companies such as Defendant First Team Real Estate - Orange County direct their real estate agents to cold call consumers without consent using autodialers and prerecorded voice messages in violation of the Telephone Consumer Protection Act. Plaintiff Paramjit Lalli ("Plaintiff Lalli" or "Lalli") brings this Class Action Complaint and Demand for Jury Trial against Defendant First Team Real Estate - Orange County ("Defendant" or "First Team") to stop First Team from directing its agents to

violate the Telephone Consumer Protection Act ("TCPA"), and to obtain injunctive and monetary relief for all persons injured by First Team's telemarketing. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Paramjit Lalli is a resident of Tustin, California.

2.      Defendant First Team is a California corporation headquartered at 108 Pacifica Suite 300, Irvine, California. Defendant conducts business throughout this District, California, and the United States.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the TCPA, 47 U.S.C. § 227.

4.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and because the wrongful conduct giving rise to this case was directed from and/or occurred in this District. Additionally, Plaintiff also resides in this District.

## COMMON ALLEGATIONS

5.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3) 20. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

6.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years with the advancement of dialing technology.

7.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

8.      According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited Apr. 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id*.

9.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

10.     In recent years a troubling trend has surfaced in the real estate industry where real estate agents are buying lists and cold calling consumers using autodialing technology to solicit their services without the consumer's consent.

11.     This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls, prerecorded voice messages, and text messages in violation of the TCPA.

**FIRST TEAM REALTY RATIFIES ITS REALTORS' TCPA VIOLATIONS**

12.     First Team is a real estate brokerage that services consumers in buying and selling homes throughout California.[1]

13.     First Team is directly involved in the training and business development of its realtors, providing live and online training to its realtors.[2]

14.     As First Team states explicitly in its marketing materials and online through its main website, "First Team was founded with the idea that training and coaching are key to an agent's success."[3]

15.     An essential part of First Team's marketing plan involves cold calling consumers to generate leads for their real estate services with a special emphasis on placing calls to consumers with *expired property listings*.

---

[1] https://www.linkedin.com/company/first-team-real-estate/about/
[2] https://www.firstteam.com/agent-tool-kit/
[3] *Id.*

CLASS ACTION COMPLAINT
-4-

16.     Realtors target consumers with expired property listings since these consumers previously had a property for sale on the market through the multiple listing service (MLS) through an agent, but the property did not sell. Realtors hope that by calling the cell phone numbers associated with these expired property listings (generated by performing a reverse append for the expired property listing address to generate cell phone numbers associated with the address) that they can telemarket their services to this homeowner to list their property with them.

17.     These calls are made to consumers using autodialers, pre-recorded messages, and autodialed text messages without first obtaining prior written consent from the consumer.

18.     First Team published a training document to its First Team agents called "7 Steps to Go From New Agent to Top Producer."[4] The goal of this training is to develop its agents into "Top Producers" which will result in more sales and revenue for the Defendant.

---

[4] http://www.firstteamrealestate.net/FT/7-steps/7-steps.pdf

# 7 STEPS TO GO FROM
# NEW AGENT TO TOP PRODUCER



19.     This training document provides insight into the marketing plan and direction First Team provides to its own real estate agents.

20.     Under Step 6 "Get Business" First Team explains that there are two ways to generate real estate leads: Marketing and Prospecting.[5]

21.     This manual explains that "Prospecting is a more pro-active approach to lead generation…Prospecting is incredibly important to a real estate agent's lead generation system, and is vital to the new agent, as it generally produces faster results."  One such "Prospecting" method detailed in this manual is "Cold Calling" and "Working Expired Listings."

---

[5] *Id.*

**STEP 6: GET BUSINESS**

We all know that the main reason why most small businesses fail in the first two years is a lack of business and the same goes for real estate agents.

In real estate, there are literally thousands of methods to generate leads, but they fall into two categories. – *Marketing & Prospecting.*

**Marketing**
Marketing is the process of putting your name out into the marketplace through a number of ways. The most common ways of marketing are: Newspaper Ads, Neighborhood Flyers (also known as Farming), Search Engine Optimization, Social Media, Personal Websites, Youtube Video Blasts, Weekly/Monthly Newsletters, and Third-Party Internet Search Sites.

**Prospecting**
Prospecting is a more pro-active approach to lead generation; it requires more action on the agent's part. Common forms of Prospecting include: Open Houses, Door Knocking, Cold Calling, Warm Calling, Working Expired Listings, Attending Networking Groups, Attending Community Functions & Ceremonies, etc. Prospecting is incredibly important to a real estate agent's lead generation system, and is vital to the new agent, as it generally produces faster results.

*Figure 1:First Team's Manual "7 Steps to From New Agent to Top Producer"*

22.     First Team provides direct training to its First Team agents both in-person and online through their training portal First Team University.

23.     First Team University held a training event at its head office in Irvine, California specifically regarding "Cold Calling."



---

24.    The description for this training is entitled "Cold Calling: How to Make it Fun & Effective."  In this training session, First Team presents a First Team "top producer" to teach its agents how to cold call.  In this session, the trainer demonstrates that making calls to expired listings works and recommends this marketing method to the First Team agents.

# COLD CALLING
## HOW TO MAKE IT FUN & EFFECTIVE

Learn from a Top Producer how effective calling and follow-up contribute to a successful business!

Up to 50% of Mike's successful business comes from calling. He plans on bringing an agent to role play live and will teach you Over The Phone Prospecting and How to make it FUN & EXCITING

Does calling work? YES! Mike makes calls to Expired/For Sale by owner, Just Listed, Just Solds, Farms, your Sphere of Influence, affiliates, vendors...

Topics that will be discussed in this training:

- Have Expectations
- Know your numbers
- Know your statistics in your area
- Every No = Closer to a Yes
- Each contact has a Dollar Value
- No Cost

Just call consistently! It works. Many of the nation's Top Producers use cold calling as their income generating source.

**For more information, click here.**                    7

---

7 *Id.*

CLASS ACTION COMPLAINT
-8-

25.    The aforementioned trainer of the event was Mike Patel, a First Team Realtor. (Patel is also one of the agents that used a prerecorded message to directly solicit Plaintiff who had an expired listing.)  Mike Patel is so good at what he does that Defendant First Team brought him to their head office to train other First Team agents how to generate leads through cold calling, thereby ratifying his conduct and the conduct of other similarly acting realtors.

Mike Patel posted a video presentation he gave to a live audience at First Team realty on cold calling.



**Mahesh Mike Patel**
817 subscribers

Feel free to make comments and subscribe to my channel!

This Presentation was made at the Corporate office of First Team Real Estate, Irvine Ca  on Aug 5th, 2015   Mastery Series

Cold Calling and Over the Prospecting is Fun, Effective and Profitable. If you learn the techniques of calling and handling how to respond what they say, no matter what they say, cold calling is a great way to get appointments and deals consistently.

It boils down to your attitude towards prospecting on the phone and what results you expect out of calling.  If you do it consistently with the right techniques as discussed here, your sales numbers can increase dramatically.

A follow up system is discussed as well.  70% of all the appointments are made on follow up calls or contacts.

Courtesy of https://www.MikePatel.com
First Team Real Estate, Broker Associate.  714-470-8600

Call Me And Consider It Done!                                                                        9

26.     The "Mastery: Cold Calling" presentation given by Mike Patel was given at a First Team's "Corporate office of First Team Real Estate" and was introduced by the Senior Vice President of First Team Realty at that time, Terry LeClaire.

27.     During Patel's presentation on cold calling, one participant asked Mike Patel where he obtained the phone numbers to call the expireds. He answered

"for the expireds you can get it yourself…there are 3 or 4 websites we use: reap007.com - their local, there are other companies called theredx.com, vulcan7.com…They charge anywhere from $50 all the way up to $300 per month.  The good thing is that they email you every morning expireds in a certain area...We buy them because I don't want to spend my time looking for numbers, I'd rather be calling…You got those websites? did you write them down? That's Redx.com and Vulcan7.com. It's V-U-L-C-A-N and the number 7.com  and that's $300 per month, and that includes the dialer. Most

---

[9] *Id.*

of these include the dialer. It's an efficient way of doing it. Instead of you dialing, it will dial the number for you. It's very fast." [10]

28.     Patel goes on to train the agents that "I want to do my 100 dials. And your goal is to get a lead out of it."

29.     Patel himself admits that he calls expireds:

"I'm a business person…and I'm into numbers. One of the most profitable ways to do business in real estate is over the phone prospecting because it's free. It's totally free. I'll give you an example, 45 days ago, I called an expired first thing in the morning 8:00 like I do."

"It's a pure numbers games, sometimes you don't have to be smart, you don't have to know all of the objections, it's strictly a numbers game."

30.     Another participant asked "On these services that sell the phone numbers, are they given to a bunch of agents so these customers are getting called all the time?" Essentially, the participant is asking whether the companies that sell the expireds like Vulcan7 and RedX sell them to many agents who are all calling the same expireds at once. Patel answers:

  "Everybody gets it, but here's the secret, not a lot of people call. You know one of the most common things I get when I call, assuming you are calling before 9 o'clock in the morning

[Patel Role Playing Prospective Consumer] "You are the 7th or 10th person calling!". …
[Patel Answering] "Hey…I appreciate only 10 people called you, did you know in Orange County there are over 10,000 people and only 10 people called you. I'm surprised.  I tell them and they say what do you mean? Well,

---

[10] https://www.youtube.com/watch?v=VdDF453wTn8 (29 min)

there are 10,000 agents and only 10 called you. Let me ask you, when you sell this home where are you going to move to?
[Patel Resume Teaching] It doesn't matter that they have it, they don't call. That is why I work expireds because there are less numbers."

31.     A realtor audience member asks again for the name of the websites where one can purchase the expired lead information. Patel goes to the white board and writes them out;

Reap007.com, theRedx.com, and Vulcan7.com. These include the dialer, it's about $300 a month. These are $50 per month and it comes with expireds and For Sale by Owners....there are other dialers like Arch dialer and all that...V-U-L-C-A-N 7.com, or just Google Vulcan7 Expireds and it will pop up."[11]

32.     Another participant asks Patel how the dialer works and Patel responds by describing how he uses his dialer.

"What the dialer does, is when you get the numbers, then let's say I'm calling 'just listed' so I call my title company or go to ColeRealtyResource.com...I use ColeRealtyResource.com and what you will get from them is 2 kinds of numbers and they just started giving you cell phone numbers. I think it's $800 per year and $800 for another one...What I do is if I just listed a property, I go into ColeRealty they have a map. I put the address and I go a half a mile or a mile and get all the numbers. They will give me an excel sheet. Once I get the excel sheet, I upload it into Vulcan. It goes in there. I hit dial and it dials automatically so I don't have to dial."

---

[11] *Id. 1hr 7 min*

33.     Patel addresses the fact that many times the expired listings services provide three or four numbers, many of which are not even the owner's phone number and yet he autodials them anyway

"Cole Realty for example gives me 3 or 4 numbers. Let's say you have a house and you rented it out. Sometimes it will give me your daughter's number or your brother's number whoever stayed in the house. Sometimes I call and I say I'm calling about the home for sale, yeah but that's my Mom's house…I noticed it is for sale I'm trying to figure out if your Mom is accepting offers, what is your Mom's phone number? They give it to me all the time."

34.     Another participant in the class tells Patel about other expired listing services: Landvoice and Mojo Sells and describes that it is a powerdialer and Patel writes those on the whiteboard as well.[12]

35.     Patel goes on to describe the autodialing system he uses:

"I use Vulcan and you can use whatever number you want it to show (describing spoofing the caller ID)."[13]

36.     Patel concludes his training on cold calling by bringing up an agent and running through several role playing scenarios, including calling a consumer associated with an expired listing.[14]

37.     Many other First Team trainers and corporate employees similarly promote and otherwise sanction purchasing lists of expired listings and repeatedly

---

[12] 1hr 9min
[13] 1hr 10 min
[14] 1:11:56

calling them in TCPA violative ways.  In fact, First Team provides every realtor with an autodialer capable of sending mass text messages, kvCORE.

## TCPA LEGALITY OF AUTODIALED CALLS

38.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

39.     Yet in violation of this rule, Defendant and its realtors fail to obtain any express written consent prior to sending autodialed text messages and prerecorded communications to cellular telephone numbers such as those of Plaintiff.

40.     Unsurprisingly, considering the direction First Team provides to its agents regarding cold calling, there are numerous complaints posted online about unsolicited calls consumers received from First Team agents:

- "Some guys keeps calling, when asked shy "it's my job"  I have told these dumb fugs to stop calling.  If this is a legit real estate firm they r crazy as I  going to l police drpt with harassing phone call complaint, he calls one min after being told to stop sev days in a row. FIRST TEAM REALITY OR REAL ESTATE.  This has to be a fraud, they could not be that free ee eking stupid."[15]

---

[15] https://800notes.com/Phone.aspx/1-714-368-7255

- "Pls. Stop calling!!!!"[16]

- "Constant phone harassment. Extremely obnoxious telemarketing company that will hang up in your face if you ask how they got your number."[17]

### PLAINTIFF LALLI'S ALLEGATIONS

**First Team Realtors Called and Texted Plaintiff Lalli's Cell Phone Number Without His Consent Using An Autodialer and Prerecorded Voice**

41.     Plaintiff Lalli had a property listed for sale, but the listing expired and was removed from the MLS – Multiple Listing Service.

42.     Lalli began receiving calls and text messages from realtors, including unsolicited autodialed text messages and a call from First Team agents.

43.     On March 19, 2019 at 8:24 AM, Lalli received an autodialed text message with a link to a video from Mike Patel, a First Team agent using phone number 714-470-8600 on his cell phone:

---

[16] *Id.*

[17] https://www.yelp.com/biz/mohamad-lababidi-first-team-real-estate-rancho-cucamonga



44.   The video is entitled, "Mike Patel commercial 1: What Makes me Different." The video is of Patel describing his experience selling homes, and specifically regarding Patel's expertise in selling homes with expired listings. In fact, the video begins with Patel stating, "Hi, my name is Mike Patel with First Team Real Estate, and if you're watching this video, unfortunately your house did not sell" and includes a banner titled "Expired Listing Specialist."



45.     Patel himself admits that he uses a dialer to automatically contact expired listings, and even provides training to other First Team agents on how to replicate his lead generation method of calling and texting expireds.

46.     Plaintiff Lalli believes this text message from Patel was sent using an autodialer due to its generic content and pre-rerecorded content.

47.     714-470-8600 is Patel's direct number.

48.     On March 29, 2019 at 3:25 PM, Plaintiff Lalli received an autodialed call from David Chase, a realtor with First Team Realty on his cell phone using phone number 714-481-5459 regarding Lalli's expired property listing.

49.     When 714-481-5459 is called, the following automated message plays:

> "Hello, this is David Chase at First Team Real Estate. I'm part of the Re-Marketing Team and a luxury agent here at First Team. I'd love to speak to you about your listing that was previously on the market with another agent and uh we can discuss the reason why it didn't sell the first time around, and the way I would do it differently, which is all I do here at First Team. So please leave a message and I'll give you a call right back. Thank you so much."

50.     Plaintiff believes the call he received from Chase was autodialed based on the fact that all First Team agents are provided the kvCORE autodialer by First Team.

51.     On July 12, 2019 at 10:41 AM, Plaintiff Lalli received an autodialed text message on his cell phone from a First Team agent:



52.     When 714-942-1898 is called, Greg Carrescia, a realtor and assistant regional manager answers.[18]

53.     Plaintiff Lalli believes this text message, presumably from Carrescia was sent using an autodialer due to its generic nature.

54.     Plaintiff Lalli has never provided his cellular phone number, or any phone number to First Team, or otherwise consented to any First Team realtor placing solicitation telephone calls or sending solicitation text messages to his cell phone number.

55.     The unauthorized text messages and call sent by First Team harmed Plaintiff Lalli in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his cell phone, in addition to the wear and tear

---

[18] https://www.firstteam.com/agent/49419-greg-carrescia/

on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

56.     Seeking redress for these injuries, Plaintiff Lalli, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits pre-recorded solicitation calls and unsolicited autodialed calls and text messages to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

57.     Plaintiff Lalli brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) one or more of Defendant's realtors called or texted, (2) for substantially the same reason Defendant's realtors called or texted Plaintiff, (3) using a prerecorded voice message, and (4) for whom Defendant or its realtors claim (a) they obtained prior express written consent in the same manner as they claim they obtained prior express written consent to call or text Plaintiff, or (b) they did not obtain prior express written consent.

> **Autodialed Call No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) one or more of Defendant's realtors called or texted, (2) for substantially the same reason Defendant's realtors called or texted Plaintiff, (3) using the same equipment used to call or text Plaintiff, and (4) for whom Defendant or its realtors claim (a) they obtained prior express written consent in the same manner as they claim they obtained prior express written consent to call or text Plaintiff, or (b) they did not obtain prior express written consent.

**<u>Patel Prerecorded No Consent Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) Mike Patel called or texted, (2) for substantially the same reason Mike Patel called or texted Plaintiff, (3) using a prerecorded voice message, and (4) for whom Defendant or Mike Patel claim (a) they obtained prior express written consent in the same manner as they claim they obtained prior express written consent to call or text Plaintiff, or (b) they did not obtain prior express written consent.

**<u>Patel Autodialed Call No Consent Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) Mike Patel called or texted, (2) for substantially the same reason Mike Patel called or texted Plaintiff, (3) using the same equipment used to call or text Plaintiff, and (4) for whom Defendant or Mike Patel claim (a) they obtained prior express written consent in the same manner as they claim they obtained prior express written consent to call or text Plaintiff, or (b) they did not obtain prior express written consent.

58.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Lalli anticipates the need to amend the Class definitions following appropriate discovery.

59.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

60.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Lalli and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant's real estate agents used an automatic telephone dialing system to send text messages to Plaintiff Lalli and other consumers;

(b)     whether Defendant's real estate agents used an automatic telephone dialing system to place calls to Plaintiff Lalli and other consumers;

(c)     whether Defendant's real estate agents transmitted pre-recorded messages by call or text to Plaintiff Lalli and other consumers;

(d)     whether Defendant's real estate agents placed calls and sent text messages to Plaintiff Lalli and other consumers without first obtaining their prior express written consent;

(e)     whether Defendant is vicariously liable for the telemarketing of its real estate agents, including agent Mike Patel; and

(f)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

61.     **Adequate Representation**: Plaintiff Lalli will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Lalli has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to the Plaintiff. Plaintiff Lalli, and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Lalli nor his counsel has any interest adverse to the Classes.

62.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lalli and the Prerecorded No Consent Class)**

63.     Plaintiff Lalli repeats and realleges paragraphs 1 through 62 of this Complaint and incorporates them by reference.

64.     Defendant's agents made solicitation calls and sent solicitation messages using a prerecorded voice to Plaintiff Lalli and the other members of the Prerecorded No Consent Class.

65.     These prerecorded calls and messages were sent *en masse* without the

prior express written consent of Plaintiff Lalli and the other members of the Prerecorded No Consent Class.

66.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff Lalli and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lalli and the Autodialed Call No Consent Class)**

67.     Plaintiff Lalli repeats and realleges paragraphs 1 through 62 of this Complaint and incorporates them by reference.

68.     Defendant's realtors made unwanted solicitation calls to cellular telephone numbers belonging to Plaintiff Lalli and the other members of the Autodialed Call No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

69.     These solicitation telephone calls were made/sent *en masse* without the prior express written consent of Plaintiff Lalli and the other members of the Autodialed Call No Consent Class.

70.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Lalli and the other members of the Autodialed Call No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Lalli and the Patel Prerecorded No Consent Class)**

71.     Plaintiff Lalli repeats and realleges paragraphs 1 through 62 of this Complaint and incorporates them by reference.

72.     Defendant's agent Mike Patel made solicitation calls and sent solicitation messages using a prerecorded voice to Plaintiff Lalli and the other members of the Patel Prerecorded No Consent Class.

73.     These prerecorded calls and messages were sent *en masse* without the prior express written consent of Plaintiff Lalli and the other members of the Patel Prerecorded No Consent Class.

74.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff Lalli and the other members of the Patel Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## FOURTH CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Lalli and the  Patel Autodialed Call No Consent Class)

75.     Plaintiff Lalli repeats and realleges paragraphs 1 through 62 of this Complaint and incorporates them by reference.

76.     Defendant's realtor Mike Patel made unwanted solicitation calls and texts to cellular telephone numbers belonging to Plaintiff Lalli and the other members of the Patel Autodialed Call No Consent Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. These solicitation telephone calls were made/sent *en masse* without the prior express written consent of Plaintiff Lalli and the other members of the Patel Autodialed Call No Consent Class.

77.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Lalli and the other members of the Patel Autodialed Call No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lalli, individually and on behalf of the Classes, prays for the following relief:

78.    An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Lalli as the representative of the Classes; and appointing his attorneys as Class Counsel;

79.    An award of actual and/or statutory damages and costs;

80.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

81.    An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

82.    Such further and other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff Lalli requests a jury trial.

Dated: January 7, 2020

By: /s/ *Rachel E. Kaufman*
  Rachel E. Kaufman
  rachel@kaufmanpa.com
  KAUFMAN P.A.
  400 NW 26th Street
  Miami, FL 33127
  Telephone: (305) 469-5881

  *Attorney for Plaintiff and the putative Classes*