1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARAMJIT LALLI, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>FIRST TEAM REAL ESTATE-ORANGE COUNTY, a California corporation,<br><br>          Defendant. | Case No. 8:20-cv-00027-JWH-ADSx<br><br>**ORDER ON MOTION OF PLAINTIFF FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 73]** |

# I.  INTRODUCTION

Before the Court is the unopposed Motion of Plaintiff Paramjit Lalli for Preliminary Approval of Class Action Settlement.[1]  The Court finds that the Motion is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the following reasons, the Court **GRANTS** the Motion.

## II.  BACKGROUND

**A.**    **Allegations and Procedural Summary**

Lalli alleges that Defendant First Team Real Estate-Orange County, a real estate agency, directed its real estate agents to "cold call consumers without consent using autodialers and prerecorded voice messages in violation of the Telephone Consumer Protection Act," 47 U.S.C. § 227 (the "TCPA").[2]  Lalli further avers that First Team "published a training document to its . . . agents called '7 Steps to Go From New Agent to Top Producer.'"[3]  The publication describes a method of "prospecting" for "lead generation" referred to as "Cold Calling" and "Working Expired Listings."[4]

First Team allegedly held a training event at which a First Team realtor gave a presentation about cold calling.[5]  During the presentation, a participant asked the First Team realtor where he obtained the phone numbers to call the potential customers who had listed properties for sale but whose listings had

---

[1]    Pl.'s Mot. for Preliminary Approval of Class Action Settlement (the "Motion") [ECF No. 73].

[2]    Compl. (the "Complaint") [ECF No. 1] at 1:20-23.  The Court restates the allegations in the Complaint for context but makes no determination regarding their veracity.

[3]    *Id.* at ¶ 18.

[4]    *Id.* at ¶ 21.

[5]    *Id.* at ¶ 26.

expired.[6]  These potential customers are called "expireds."[7]  The First Team realtor explained the following:

> for the expireds you can get it yourself . . . there are 3 or 4 websites we use:  reap007.com—their local, there are other companies called theredx.com, vulcan7.com . . . .  They charge anywhere from $50 all the way up to $300 per month.  The good thing is that they email you every morning expireds in a certain area . . . .  We buy them because I don't want to spend my time looking for numbers, I'd rather be calling . . . .  You got those websites?  did you write them down?  That's Redx.com and Vulcan7.com.  It's V-U-L-C-A-N and the number 7.com and that's $300 per month, and that includes the dialer.  Most of these include the dialer.  It's an efficient way of doing it.  Instead of you dialing, it will dial the number for you.  It's very fast.[8]

Lalli further alleges that "First Team provides every realtor with an autodialer capable of sending mass text messages, kvCORE."[9]

Lalli had listed a property for sale that had expired and was removed from the Multiple Listing Service.[10]  "Lalli began receiving calls and text messages from realtors, including unsolicited autodialed text messages and a call from First Team agents."[11]  "On March 19, 2019 at 8:24 AM, Lalli received an autodialed text message with a link to a video from" Mike Patel, a First Team realtor.[12]  Ten days later, Lalli received an autodialed call from another First

---

[6]    *Id.* at ¶ 27.
[7]    *See id.*
[8]    *Id.* at ¶ 27.
[9]    *Id.* at ¶ 37.
[10]   *Id.* at ¶ 41.
[11]   *Id.* at ¶ 42.
[12]   *Id.* at ¶ 43.

1    Team agent.[13]  A few months after that, Lalli received an "autodialed text
2    message on his cell phone from" a different First Team agent.[14]  Lalli alleges
3    that he did not provide his telephone number or otherwise consent to these
4    calls.[15]

5          On January 1, 2020, Lalli filed his Complaint, thereby commencing this
6    putative class action.  The Complaint includes four claims for relief, each of
7    which alleges violations of the TCPA.[16]  Under that statute, it is unlawful (with
8    limited exceptions) "to make any call . . . using any automatic telephone dialing
9    system or an artificial or prerecorded voice . . . " to a cellphone number.  47
10   U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a $500 statutory penalty for
11   each violation or up to $1,500 per violation if the defendant acted willfully or
12   knowingly.  47 U.S.C. § 227(b)(3).

13         On February 5, 2021, Lalli, on behalf of himself and a class of similarly
14   situated persons, filed the instant Motion, which is unopposed.

15   **B.    <u>Summary of Proposed Settlement</u>**

16         The following is a summary of the proposed settlement agreement.[17]

17         **1.    <u>Settlement Class</u>**

18   The proposed settlement class is:

19         all persons in the United States who from four years prior to the filing
20         of this action through preliminary approval (1) one or more of First
21         Team's realtors called or texted, (2)(a) on their cellular telephone
22         numbers using Vulcan7 and/or RedX, and/or (b) on their cellular or
23         landline telephone numbers using a prerecorded voice message,

---

24   [13]      *Id.* at ¶ 48.
25   [14]      *Id.* at ¶ 51.
26   [15]      *Id.* at ¶ 54.
27   [16]      *See generally id.*
28   [17]      Proposed Settlement Agreement (the "<u>Settlement Agreement</u>") [ECF No. 73-1].

(3) whose phone numbers First Team's realtors obtained from Vulcan7 and/or RedX, and (4) who are identified in the Vulcan7 call logs and/or RedX call logs that have been produced in the action.[18]

### 2. Settlement Amount

Pursuant to the Settlement Agreement, First Team "will cause to be created a Settlement Fund in the amount of $478,500 for the purpose of making all required payments under" the Settlement Agreement.[19] First Team's maximum monetary obligation will not exceed $478,500.[20] Each member of the proposed settlement class who does not timely opt-out will be entitled to make a claim.[21] Each member "shall be entitled to submit one claim per telephone number they used or subscribed to," and the settlement funds will be distributed on a *pro rata* basis after settlement administration costs, and any approved fee award or service award.[22]

First Team also "agrees that it will internally distribute to its realtors a notice outlining the procedural requirements for TCPA compliance, including specifically with respect to the use of autodialer and prerecorded voice technology and compliance with the requirements of the National Do Not Call Registry, and the penalties for failure to comply with the TCPA"[23]

### 3. Settlement Administration and Notice Plan

The parties have selected KCC as the settlement administrator.[24] "The anticipated notice and administration costs are approximately $73,000."[25] KCC

---

[18]   *Id.* at ¶ 1.1.36.
[19]   *Id.* at ¶ 4.1.
[20]   *Id.*
[21]   Motion at 9:11-12.
[22]   *Id.* at 9:15-23.
[23]   *Id.* at 6:9-14.
[24]   Settlement Agreement at ¶ 1.1.35.
[25]   Motion at 7:5.

will be responsible for administering the following notice plan: "(1) direct mailed Summary Notice; (2) publication notice through targeted social media ads that link to the Class Settlement Website; and (3) Long-Form Notice to be provided on the Settlement Website."[26]  KCC will "send direct notice within thirty (30) days after the Court enters the Preliminary Approval Order."[27]  KCC will also publish the publication notice beginning within 30 days "after the Court enters the Preliminary Approval Order."[28]  The proposed Long-Form Notice and Summary Notice are attached to the Settlement Agreement as Exhibits B and C.[29]

### 4. <u>**Opt-Out and Objection Process**</u>

Any member of the proposed settlement class "who does not wish to participate in" the proposed settlement "must write to [KCC] stating an intention to be 'excluded' from" the settlement.[30]  The request must be sent by first class U.S. mail, postmarked no later than the Opt-Out Deadline,[31] which the Settlement Agreement defines as approximately 60 days after KCC disseminates notice of the proposed settlement by mail.[32]  Any objection to the Settlement Agreement, "including any of its terms or provisions, must be in writing, and filed with the Court or mailed to the Clerk's Office."[33]  Members of the settlement class will have the right to appear and show cause why the Settlement Agreement should not be given final approval.[34]  An objecting party must file a

---

[26]    *Id.* at 7:12-16.
[27]    *Id.* at 8:6-10.
[28]    *Id.*
[29]    Settlement Agreement at Exs. B & C.
[30]    *Id.* at ¶ 10.4.1.
[31]    *Id.*
[32]    *Id.* at ¶ 1.1.25.
[33]    Motion at 8:20-22.
[34]    Settlement Agreement at ¶ 10.2.1.

-6-

1  notice of intention to appear at the final settlement hearing by the Opt-Out
2  Deadline.[35]

3      **5.**    <u>**Release**</u>

4         In exchange for the settlement consideration, Lalli and all members of the
5  proposed settlement class agree to release the following claims:

> 6  any and all claims, liabilities, demands, causes of action, or lawsuits
> 7  of any and all Settlement Class Members, whether known or
> 8  unknown, whether legal, statutory, equitable, or of any other type or
> 9  form, whether under federal, state, local law , or regulations (such as
> 10  any violations of the Telephone Consumer Protection Act, 47 USC
> 11  § 227, the FCC's related regulations—including Do Not Call
> 12  requirements, or unfair or deceptive practices act), and whether
> 13  brought in an individual, representative, or other capacity, that:
> 14  (a) were brought in the Litigation, or (b) arise from or relate to the
> 15  manner in which the calls or texts to Settlement Class Members were
> 16  made, or attempted to be made, by or on behalf of First Team and/or
> 17  its realtors, including without limitation, using an automated
> 18  telephone dialing system or through a pre-recorded voice, or (c) arise
> 19  from or relate to the making, or attempted making, of the calls or
> 20  texts to Settlement Class Members by or on behalf of First Team
> 21  and/or its realtors to telephone numbers registered on any federal or
> 22  state do not call list, or (d) arise from or relate to the making, or
> 23  attempted making, of the calls or texts to Settlement Class Members
> 24  by or on behalf of First Team and/or its realtors, or (e) arise from or

---

[35]    *Id.* at ¶ 10.2.2.

1   relate to the conduct alleged in the Complaint, within the four years

2   preceding January 7, 2020.[36]

3   **6.    Class Counsel Fees and Expenses and Plaintiff's Service Award**

4   First Team "has agreed to pay from the Settlement Fund reasonable

5   attorneys' fees and costs to Class Counsel and a Service Award to the Class

6   Representative, in amounts approved by the Court."[37]  Class Counsel intends to

7   petition the Court for an incentive award not to exceed $5,000.[38]  Class Counsel

8   also intends to apply to the Court for attorneys' fees totaling not more than one-

9   third of the Settlement Fund.[39]  Lalli requests that the Court "consider whether

10  to grant or deny these awards separate and apart from its consideration of the

11  Settlement's fairness and reasonableness."[40]

12  **III.  DISCUSSION**

13  **A.    Preliminary Approval of the Settlement Agreement**

14  **1.    Legal Standard**

15  "The claims, issues, or defenses of . . . a class proposed to be certified for

16  purposes of settlement" may be settled only with the court's approval."

17  Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of

18  th[e] class members, including the named plaintiffs, whose rights may not have

19  been given due regard by the negotiating parties."  *Officers for Justice v. Civil*

20  *Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  The

21  decision to approve a class action settlement is "committed to the sound

22  discretion of the trial judge," *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268,

23

24

25  [36]    Settlement Agreement at ¶ 1.1.29.

26  [37]    Motion at 10:9-11.

27  [38]    *Id.* at 10:12-14.
    [39]    *Id.* at 10:17-19.

28  [40]    *Id.* at 11:1-2.

1276 (9th Cir. 1992), who must examine the settlement to determine if it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2).

In determining whether a class settlement is "fair, reasonable, and adequate," a district court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  The goal of Rule 23(e)(2), as amended in 2018, "is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  A court must review the entire settlement agreement, as a whole, for overall fairness.  *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

**2.    Adequacy of Representation by Class Representatives and Class Counsel**

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class.

-9-

1    This analysis includes, for example, "the nature and amount of discovery"

2    undertaken in the litigation, or "the actual outcomes of other cases."

3    Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.  In this case, class

4    counsel have extensive experience with TCPA litigation.[41]  Moreover, the

5    proposed settlement "was reached only after effectively completing discovery,

6    including extensive third party discovery, expert discovery, numerous

7    depositions, and informal discovery concerning [First Team's] financial

8    condition," as well as fully briefing class certification.[42]  The Court therefore

9    finds that Lalli and class counsel have adequately represented the proposed

10    settlement class, which weighs in favor of preliminary approval of the

11    Settlement Agreement.

12        **3.    Negotiated at Arm's Length**

13        Next, the Court considers whether the proposed settlement was

14    negotiated at arm's length.  *See* Fed. R. Civ. P. 23(e)(2)(B).  As with the

15    preceding factor, this factor can be "described as [a] 'procedural' concern[],

16    looking to the conduct of the litigation and of the negotiations leading up to the

17    proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

18    "[T]he involvement of a neutral or court-affiliated mediator or facilitator in

19    [settlement] negotiations may bear on whether th[ose] [negotiations] were

20    conducted in a manner that would protect and further the class interests."

21    Fed. R. Civ. P. 23(e)(2)(B), 2018 Advisory Committee Notes.

22        Here, the parties "engaged in a full-day, contentious mediation with

23    Central District of California Judge Andrew Guilford (Ret.)."[43]  The mediation

24    did not initially result in a settlement, but "the parties engaged in further

25

26    _____

27    [41]    Decl. of Avi R. Kaufman in Supp. of Motion [ECF No. 73-2] ¶ 18.

      [42]    *Id.* at ¶ 2; *see also id.* at ¶¶ 3 & 4.

28    [43]    *Id.* at ¶ 7.

settlement negotiations with the assistance of Judge Guilford over the course of the following weeks," which ultimately culminated in the Settlement Agreement.[44]

In sum, the parties negotiated at arm's length, and there is no indication that the proposed settlement is the product of collusion.  This factor therefore weighs in favor of preliminary approval.

### 4.    Adequacy of Relief Provided for the Class

The third factor is whether "the relief provided for the class is adequate, taking in to account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  Under this factor, the relief "to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

### a.    Costs, Risks, and Delay

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) ("district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

---

[44]    *Id.*

-11-

In arriving at the Settlement Agreement, class counsel considered several potential difficulties that may arise if litigation were to proceed, including:

> [T]he strength of Defendant's defenses, the limitations of Defendant's financial ability to pay a potential final judgment, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk [of] a change in the law[.][45]

Lalli and class counsel have obtained a total settlement amount of $478,500. The Court finds this sum to be adequate given the costs, risks, and delay of continued litigation.

### b.    Effectiveness of Method of Distributing Relief

The Court must also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

Payment will be made only to class members who timely submit a valid claim form.[46] The claim form is attached to the Settlement Agreement.[47] A claim form may be submitted "by mail or online."[48] The form is relatively

---

[45] *Id.* at ¶ 8.
[46] Settlement Agreement at ¶ 4.4.4.
[47] *Id.* at Ex. A.
[48] *Id.* at ¶ 8.1.

1 | simple and will take a minimal amount of time to complete.[49]  The Court finds
2 | the method of distributing relief to be adequate.

3 |        **c.**    **Proposed Award of Attorneys' Fees**

4 |        Lalli and class counsel have indicated that they intend to seek a service
5 | award and an award of attorneys' fees, respectively.  However, the Settlement
6 | Agreement is not contingent on any such award.  As requested by class counsel,
7 | the Court will consider any fee or service award separately from the preliminary
8 | approval of the proposed settlement.

9 |        **d.**    **Agreement Identification Requirement**

10 |        The Court must also evaluate any agreement made in connection with the
11 | proposed Settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).  Here, the
12 | Settlement Agreement presently before the Court is the only agreement.  Thus,
13 | the Court need not evaluate any additional agreements outside of the Settlement
14 | Agreement.

15 |        Based upon the foregoing, the Court finds that this factor weighs in favor
16 | of preliminary approval of the Settlement Agreement.

17 |     **5.**    **Equitable Treatment of Class Members**

18 |        The final Rule 23(e)(2) factor turns on whether the proposed settlement
19 | "treats class members equitably relative to each other."
20 | Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the
21 | apportionment of relief among class members takes appropriate account of
22 | differences among their claims, and whether the scope of the release may affect
23 | class members in different ways that bear on the apportionment of relief."
24 | Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

---

28 | [49]    *See id.* at Ex. A.

-13-

1    Here, each class member must submit the same claim form.[50]  As

2  explained above, the settlement funds will be distributed based upon the number

3  of telephone calls class members received.  The Court finds that the treatment

4  of class members is equitable.  Accordingly, this factor also weighs in favor of

5  preliminary approval.

6    After weighing the preceding factors, the Court finds that the proposed

7  settlement is fair, reasonable, and adequate.

8  **B.    Preliminary Certification of the Proposed Settlement Class**

9        **1.    Legal Standard**

10    The second prerequisite for directing notice of the proposed settlement to

11 the class is a determination that "the court will likely be able to [] certify the

12 class for purposes of judgment[.]"  Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also*

13 *Ochinero v. Ladera Lending, Inc.*, 2021 WL 2295519, at *9 (C.D. Cal. Feb. 26,

14 2021).  The class action is 'an exception to the usual rule that litigation is

15 conducted by and on behalf of the individual named parties only.'"  *Wal-Mart*

16 *Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*,

17 442 U.S. 682, 700–701 (1979)).  "Rule 23(a) ensures that the named plaintiffs

18 are appropriate representatives of the class whose claims they wish to litigate."

19 *Id.* at 349.

20    Rule 23(a) imposes the following prerequisites on class actions:  (1) the

21 class is so numerous that a joinder of all members is impracticable (numerosity);

22 (2) there are questions of law or fact common to the class (commonality); (3) the

23 claims or defenses of the representative parties are typical of the claims or

24 defenses of the class (typicality); and (4) the representative parties will fairly and

25 adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

26

27

28 [50]    *See*, *e.g.*, *id.* at Ex. A.

-14-

In addition, Rule 23(b) requires at least one of the following to be true for a class action to be maintained:

(1) prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  With respect to Rule 23(b)(3), what matters is not merely "the raising of common 'questions,'" "but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350.

### 2.   Rule 23(a) Requirements

#### a.   Numerosity

The numerosity prerequisite "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  The numerosity requirement is met here because the proposed class would include thousands of members who allegedly received telephone calls or texts in violation of the TCPA.  *See, e.g.*, *Ladera Lending*, 2021 WL 2295519, at *9 ("Typically, courts have found that the numerosity requirement is satisfied when the proposed class includes at least forty members.").

#### b.   Commonality

"[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350).  Commonality is demonstrated here.  Among other things, each class member's claim involves similar issues regarding whether First Team ratified the violation of the TCPA by encouraging its agents to use auto-dialed calls and recorded messages without proper consent.

#### c.   Typicality

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(3)).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is

based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  The Rule 23(a) standard is "permissive," and it requires only that the representative's claims are "'reasonably co-extensive with those of absent class members.'"  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted).

      Lalli's claims are not identical to all class members, but they are sufficiently similar to satisfy the typicality requirement.  *See Rodriguez*, 591 F.3d at 1124 (representative's claim need not be "substantially identical") (citation omitted).  All of the class members' claims raise similar issues regarding First Team's alleged violation of the TCPA.  Accordingly, the Court finds that Lalli's claims are typical of the class.

### d.   <u>Adequacy</u>

      Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As discussed in part III.A.2, *supra*, the Court finds that Lalli and class counsel have adequately represented the class.  There is also no reason to think that Lalli's interests are not aligned with other class members.  *See, e.g.*, *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994), *as amended on denial of reh'g* (Jan. 6, 1995) (adequacy depends on the qualifications of the representative, "'an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive'") (citation omitted).  The Court therefore finds that the adequacy requirement is satisfied.

### 3.   <u>Rule 23(b) Requirement</u>

      The proposed class must also meet one of the elements listed in Rule 23(b).  The Court finds that the proposed class satisfies the predominance and superiority test under Rule 23(b)(3).

1    "The predominance analysis under Rule 23(b)(3) focuses on 'the

2    relationship between the common and individual issues' in the case and 'tests

3    whether proposed classes are sufficiently cohesive to warrant adjudication by

4    representation.'"  *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir.

5    2013) (citation omitted).  "The main concern in the predominance inquiry[] [is]

6    the balance between individual and common issues."  *In re Wells Fargo Home*

7    *Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  Here, the

8    settlement class readily satisfies the predominance test because the key

9    questions regarding First Team's alleged violation of the TCPA, including

10   whether First Team ratified the conduct of its agents, are common to all class

11   members.  The settlement class also satisfies Rule 23(b)(3)'s superiority

12   requirement because the large number of claims, the relatively small statutory

13   damages, and the desirability of adjudicating the claims consistently all indicate

14   that a class action is the superior method of adjudicating the claims at issue.

15   **C.**    **Notice Requirements Under Rule 23(c)(2)(B)**

16   "For any class certified under Rule 23(b)(3)—or upon ordering notice

17   under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement

18   under Rule 23(b)(3)—the court must direct to class members the best notice

19   that is practicable under the circumstances, including individual notice to all

20   members who can be identified through reasonable effort."

21   Fed. R. Civ. P. 23(c)(2)(B).  Such notice must clearly state the following:

22   (i) the nature of the action;

23   (ii) the definition of the class certified;

24   (iii) the class claims, issues, or defenses;

25   (iv) that a class member may enter an appearance through

26   attorney if the member so desires;

27   (v) that the court will exclude from the class any member who

28   requests exclusion;

-18-

1    (vi) the time and manner for requesting exclusion; and

2    (vii) the binding effect of a class judgment on members under

3    Rule 23(c)(3).

4  Fed. R. Civ. P. 23(c)(2)(B).  "Notice is satisfactory if it generally describes the

5  terms of the settlement in sufficient detail to alert those with adverse viewpoints

6  to investigate and to come forward and be heard."  *Churchill Vill., L.L.C. v. Gen.*

7  *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and quotation omitted).

8         The notice describes the allegations and claims in plain language,[51] defines

9  a class member,[52] provides contact information for class counsel and explains

10 that class members may retain another lawyer,[53] and summarizes the settlement

11 amount and how it will be distributed.[54]  The notice also describes the options

12 available to class members, including the instructions for opting out and filing an

13 objection.[55]  The notice informs class members in plain language that, if they do

14 not exclude themselves from the settlement, they will not be able to pursue their

15 own lawsuit for the same alleged violations.[56]  The notice informs class members

16 that they may appear at the final approval hearing.[57]  The notice also directs

17 class members to a website with more information, including the Settlement

18 Agreement.[58]  Class members have 60 days from the mailing of the notice to

19 submit a claim, opt out, or file a notice of objection.[59]  Accordingly, the notice

20 requirements under Rule 23(c)(2)(B) are met.

21

---

22  [51]    Settlement Agreement, Ex. B at ¶ 2.

23  [52]    *Id.* at ¶ 6.

    [53]    *Id.* at ¶ 15.

24  [54]    *Id.* at ¶¶ 8 & 16.

25  [55]    *Id.* at ¶¶ 10-12 & 17-23.

26  [56]    *Id.* at ¶ 12.

    [57]    *Id.* at ¶¶ 18-21.

27  [58]    *Id.* at ¶¶ 13 & 23.

28  [59]    Settlement Agreement at ¶¶ 1.1.25, 1.1.4, 4.4.3, & 10.2.1.

# IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion and orders the following:

1.     The Settlement Agreement is **PRELIMINARILY APPROVED**.

2.     The following settlement class is **CERTIFIED** for settlement purposes only:

> all persons in the United States who from four years prior to the filing of this action through preliminary approval (1) one or more of First Team's realtors called or texted, (2)(a) on their cellular telephone numbers using Vulcan7 and/or RedX, and/or (b) on their cellular or landline telephone numbers using a prerecorded voice message, (3) whose phone numbers First Team's realtors obtained from Vulcan7 and/or RedX, and (4) who are identified in the Vulcan7 call logs and/or RedX call logs that have been produced in the action.[60]

3.     The Court **APPOINTS** Rachel E. Kaufman and Avi R. Kaufman of Kaufman, P.A. to serve as counsel on behalf of the settlement class for the purposes of settlement only.

4.     Plaintiff Paramjit Lalli is **APPOINTED** as the representative of the settlement class for the purposes of settlement only.

5.     KCC is **APPOINTED** as the settlement administrator.

6.     The Court **AUTHORIZES** distribution of class notice to the settlement class members pursuant to the Settlement Agreement.

7.     The parties are **DIRECTED** to appear before this Court for a final approval hearing on November 5, 2021, at 9:00 a.m. at the George E. Brown, Jr. Federal Building and United States Courthouse, 3470 12th Street, Riverside, CA 92501, Courtroom 2.

---

[60]     *Id.* at ¶ 1.1.36.

8.     The pending motion of Plaintiff Paramjit Lalli to Certify Class [ECF No. 42] is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: July 7, 2021

John W. Holcomb
UNITED STATES DISTRICT JUDGE