1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  PARAMJIT LALLI, individually and on behalf of all others similarly situated,

12            Plaintiff,

13        v.

14  FIRST TEAM REAL ESTATE—ORANGE COUNTY, a California Corporation,

15

16            Defendant.

17

Case No. 8:20-cv-00027-JWH-ADS

**ORDER GRANTING MOTION FOR SERVICE AWARD AND CLASS COUNSEL FEES AND EXPENSES [ECF No. 78] AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 79]**

18
19
20
21
22
23
24
25
26
27
28

Before the Court are two unopposed motions of Plaintiff Paramjit Lalli, individually and on behalf of all others similarly situated. In his first motion, Lalli seeks attorneys' fees, litigation expenses, and a service award as the class representative.[1] In his second motion, Lalli asks for final approval of the class action settlement.[2] The Court conducted a hearing on the Motions in November 2021. After considering the papers filed regarding the Motions and the arguments that counsel made during the hearing,[3] the Court orders that the Motions are **GRANTED**, as set forth herein.

## I. BACKGROUND

In his Complaint, Lalli alleges that Defendant First Team Real Estate-Orange County, a real estate agency, directed its real estate agents to "cold call consumers without consent using autodialers and prerecorded voice messages in violation of the Telephone Consumer Protection Act," 47 U.S.C. § 227 (the "TCPA").[4] Lalli further avers that First Team "published a training document to its . . . agents called '7 Steps to Go From New Agent to Top Producer.'"[5] The publication describes a method of "prospecting" for "lead generation" referred to as "Cold Calling" and "Working Expired Listings."[6]

---

[1]    Pl.'s Mot. for Service Award and Class Counsel Fees and Expense (the "Motion for Attorneys' Fees") [ECF No. 78].

[2]    Pl.'s Mot. for Final Approval of Class Action Settlement (the "Motion for Final Approval") [ECF No. 79].

[3]    The Court considered the following papers: (1) the Motion for Attorneys' Fees; (2) the Decl. of Avi R. Kaufman in Supp. of the Motion for Attorneys' Fees (the "First Kaufman Declaration") [ECF No. 78-1]; (3) the Motion for Final Approval; (4) the Decl. of Avi R. Kaufman in Supp. of the Motion for Final Approval (the "Second Kaufman Declaration") [ECF No. 79-1]; and (5) the Decl. of Omar Silva Re: Notice Procedures (the "Silva Declaration") [ECF No. 79-3].

[4]    Compl. (the "Complaint") [ECF No. 1] 1:20-23. The Court restates the allegations in the Complaint for context but makes no determination regarding their veracity.

[5]    *Id.* at ¶ 18.

[6]    *Id.* at ¶ 21.

-2-

1    Lalli listed a parcel of real property for sale.  That listing expired, and it
2    was removed from the Multiple Listing Service.[7]  "Lalli then began receiving
3    calls and text messages from realtors, including unsolicited autodialed text
4    messages and a call from First Team agents."[8]  "On March 19, 2019 at
5    8:24 AM, Lalli received an autodialed text message with a link to a video from"
6    Mike Patel, a First Team realtor.[9]  Ten days later, Lalli received an autodialed
7    call from another First Team agent.[10]  A few months after that, Lalli received an
8    "autodialed text message on his cell phone from" a different First Team agent.[11]
9    Lalli alleges that he did not provide his telephone number or otherwise consent
10   to those calls.[12]

11        In January 2020, Lalli filed his Complaint, which included four claims for
12   relief, each of which alleged violations of the TCPA.[13]  After First Team
13   answered the complaint, the parties held their Rule 26(f) conference.[14]
14   Thereafter, the parties engaged in extensive discovery, with Lalli serving and
15   responding to multiple waves of written discovery.[15]  The parties also engaged in
16   multiple conferences of counsel, through which the parties were able to resolve
17   their discovery disputes without the need for motion practice.[16]  Lalli reviewed
18   more than ten thousand pages of documents ultimately produced by First
19   Team.[17]

---

[7]    *Id.* at ¶ 41.
[8]    *Id.* at ¶ 42.
[9]    *Id.* at ¶ 43.
[10]   *Id.* at ¶ 48.
[11]   *Id.* at ¶ 51.
[12]   *Id.* at ¶ 54.
[13]   *See generally id.*
[14]   First Kaufman Declaration ¶ 3.
[15]   *Id.* at ¶ 4.
[16]   *Id.*
[17]   *Id.*

In November 2020, the parties engaged in a full-day mediation with retired Judge Andrew Guilford.[18]  Over the course of several weeks, the parties negotiated and ultimately reached an agreement in principle for a class-wide resolution, which culminated in the parties' execution of a settlement agreement.[19]

In February 2021,[20] Lalli filed an unopposed motion for preliminary approval of the class settlement.[21]  After careful review, this Court granted that motion and preliminarily certified the class for settlement purposes.[22]  Lalli filed the Attorneys' Fees Motion in August and the Final Approval Motion in October.[23]

## II.  FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

### A.  Overview

As summarized in the prior order,[24] the Settlement Agreement establishes a non-reversionary Settlement Fund in the amount of $478,500 for the benefit of the Settlement Class.[25]  That figure equates to a recovery of about $110 per class member.[26]  First Team has also agreed to injunctive relief aimed at curbing

---

[18]  *Id.* at ¶ 7.

[19]  *Id.*

[20]  Hereinafter, all dates are in 2021 unless otherwise noted.

[21]  Pl.'s Mot. for Preliminary Approval of Class Action Settlement (the "Motion for Preliminary Approval") [ECF No. 73]; *see also* Proposed Settlement Agreement (the "Settlement Agreement") [ECF No. 73-1].

[22]  Order on Mot. of Pl. for Preliminary Approval of Class Action Settlement ("Order Granting Preliminary Approval") [ECF No. 77] 20:2-20.

[23]  *See generally* Motion for Attorneys' Fees & Motion for Final Approval.

[24]  Order Granting Preliminary Approval 4:15-8:11.

[25]  Settlement Agreement ¶ 1.1.40; *see also id.* at ¶ 1.1.36 (defining the settlement class).

[26]  Second Kaufman Declaration ¶ 2.

-4-

future TCPA violations.[27]  Specifically, First Team has agreed to distribute a TCPA-related notice and policy to all of its realtors.[28]

In August, KCC[29]—the Settlement Administrator—launched a website regarding the settlement, established a toll-free information hotline, and began the mailing of 41,773 notices via USPS First Class Mail to the postal addresses associated with potential class members.[30]  Additionally, the Settlement Administrator ran a social media campaign on Facebook, directing advertisements toward accounts associated with the phone numbers on the class list.[31]  At the time of the hearing, no Settlement Class Members had opted out or objected to the final settlement.

**B.    Legal Standard**

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for class-action settlements.  Fed. R. Civ. P. 23(e).  When the parties reach a settlement agreement before class certification, district courts use a two-step process to approve a class-action settlement.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  First, the Court must certify the proposed settlement class.  *Id.*  Second, the Court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Staton*, 327 F.3d. at 952. Rule 23(e)(2) instructs the Court to consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

---

[27]    Motion for Final Approval 11:16-19.

[28]    *Id.* at 1:4-6.

[29]    *See* Order Granting Preliminary Approval 5:20 & 20:20.

[30]    Silva Declaration ¶¶ 4, 8, & 9.

[31]    *Id.* at ¶ 7.

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, with respect to Rule 23(e)(2)(C)(iii), the Ninth Circuit asks district courts to undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations," regardless of "whether a settlement agreement has been negotiated before a class has been certified or after." *Westfall v. Ball Metal Beverage Container Corp.*, 2021 WL 4206851, at *4 (E.D. Cal. Sept. 16, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)). The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the class." *Briseño*, 998 F.3d at 1026. The Ninth Circuit instructs this Court to analyze three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *Id.* at 1026-27.

Prior to the 2018 Amendments, the Ninth Circuit used the following nine factors to assess fairness, adequacy, and reasonableness:

(1) the strength of the Plaintiff's case (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the stage of the proceedings; (7) the views and experience of counsel; (8) any opposition by class members; (9) the presence of a governmental participant.

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list"). The amendment to Rule 23(e)(2) was not meant "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

Lastly, the district court must approve or reject the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court must remain cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## C.    Discussion

### 1.    Class Certification

This Court preliminarily certified the proposed Class in its prior order.[32] The Court held that all four prerequisites under Rule 23(a) were met[33] and that the proposed class satisfied the predominance and superiority test under Rule 23(b)(3).[34]  Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling.  Lalli's attorneys ("Class Counsel") confirmed that point as well—on the record—during the hearing.  Class Counsel also confirmed that class members have received adequate and due notice, with at least 95% of class members having been given notice by first class mail.  Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.  *See Alvarez v. Sirius XM Radio Inc.*, 2021 WL 1234878, at *5 (C.D. Cal. Feb. 8, 2021) (doing the same when no material changes had occurred in the interim between preliminary and final certification).

### 2.    Final Approval of the Proposed Class Settlement

#### a.    Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class. This analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation, or "the actual outcomes of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.

In this case, several aspects of the litigation suggest that this factor weighs in favor of approval.  First, Class Counsel have extensive experience with TCPA

---

[32]    Order Granting Preliminary Approval 20:4-14.
[33]    *Id.* at 16:5-17:24.
[34]    *Id.* at 17:25-18:14.

litigation.[35]  Second, the parties reached the settlement only after completing

discovery, resulting in the production of "tens of thousands" of pages of

electronic documents relevant to this action and call logs, as well as the

deposition of expert witnesses and First Team representatives.[36]  The parties

also fully briefed class certification issues.[37]  The Court therefore finds that Lalli

and Class Counsel have adequately represented the proposed settlement class,

which weighs in favor of final approval of the Settlement Agreement.

### b.    Arm's Length Negotiations

The Court must consider whether the Settlement Agreement "was

negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding

factor, this factor can be "described as [a] 'procedural' concern[], looking to the

conduct of the litigation and of the negotiations leading up to the proposed

settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

Although the Court was not involved in the negotiations directly, retired

Judge Guilford served as a mediator in the negotiations for several weeks,

commencing with a full-day mediation in November 2020.[38]  The presence and

assistance of an experienced mediator in the settlement process strongly

suggests "that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*,

2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Goodwin v. Winn

Mgmt. Grp. LLC*, 2017 WL 3173006, at *8 (E.D. Cal. July 26, 2017) (concluding

that that the settlement was the product of informed, arm's length negotiations

by the parties where settlement resulted from, *inter alia*, a full day of mediation

with a mediator); *Pederson v. Airport Terminal Services*, 2018 WL 2138457, at *7

(C.D. Cal. April 5, 2018) (approving preliminary settlement where oversight "of

---

[35]    Second Kaufman Declaration ¶¶ 13-17.

[36]    *Id.* at ¶¶ 4 & 11.

[37]    *Id.* at ¶ 11.

[38]    *Id.* at ¶ 7.

an experienced mediator" reflected non-collusive negotiations).  In sum, because it appears that the parties negotiated at arm's length, this factor weighs in favor of final approval.

### c.    Adequacy of Relief Provided for the Class

The third factor is whether "the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

### i.    Costs, Risks, and Delay

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) (noting that "district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

While Class Counsel are "confident" in the strength of their case, they acknowledge the risks of prevailing at trial and the possibility of appeal when arriving at the Settlement Agreement.[39]  Such risks stem from the following:

---

[39]    *Id.* at ¶ 19.

the strength of Defendant's defenses, the limitations of Defendant's
financial ability to pay a potential final judgment, difficulties in
obtaining class certification and proving liability, the uncertain
outcome and risk of the litigation, especially in complex actions such
as this one, the inherent delays in such litigation, and, in particular,
the risk that [*sic*] a change in the law.[40]

The final risk appears especially salient, as Class Counsel point to the decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), a Supreme Court case that held that, to qualify as an "automatic telephone dialing system" under the TCPA, a device must have the capacity either to store or produce a telephone number using a random or sequential number generator. *Id.* at 1164. At the hearing, Class Counsel made a cogent point that the holding in *Facebook* would have likely precluded some of Lalli's claims. Additionally, subsequent application by district courts could have jeopardized any chance of recovery for the class, as the law continues to evolve.[41] The Court finds that the settlement amount of $478,500 is adequate given the costs, risks, and delay of continued litigation.

### ii.    Effectiveness of Method of Distributing Relief

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

---

[40]    *Id.* at ¶ 9.

[41]    Motion for Final Approval 3:23-4:15.

The Court previously found the method for distributing relief to be adequate, as the funds are only available to those who submit a timely claim online or by mail, using relatively straightforward form.[42]  Because no changes have been made to this process in the interim, the Court finds that this factor weighs in favor of final approval.

### iii.    Proposed Award of Attorneys' Fees and the *Briseño* Flags

The third prong that the Court must consider when assessing the adequacy of the relief relates to "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c).  In considering the proposed award of attorneys' fees, the Court must be on watch for three "red flags" that tend to show collusion.  *See Westfall*, 2021 WL 4206851, at *4.

The first flag is raised "when counsel receives a disproportionate distribution of the settlement[.]"  *Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *10 (C.D. Cal. Aug. 11, 2021).  Here, Class Counsel request 33% of the Settlement Fund in attorneys' fees and $47,582.69 in expenses,[43] which would represent 43% of the Settlement Fund in total.[44]  Fees are to be paid within ten calendar days after judgment is entered.[45]

The Court finds that those fees are steep, but not necessarily *disproportionate*.  "While 33 percent is on the higher side, it is a far cry from the concerning 88 percent fee in *Briseño*."  *Westfall*, 2021 WL 4206851, at *5.  Moreover, because the Court finds that the fees and expenses are not unreasonable on the whole, *see infra* Part III.C., this flag is not triggered.  *Accord Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *6 (C.D. Cal. July 19,

---

[42]    Order Granting Preliminary Approval 12:21-13:2.

[43]    As discussed in Part III.B., this figure was revised down from $48,579.48.

[44]    First Kaufman Declaration ¶¶ 32-33; Motion for Attorneys' Fees 8:4-6.

[45]    Settlement Agreement ¶ 6.4.

2021) (giving final approval of a settlement where the court found a request for attorneys' fees—equivalent to 33% of the settlement—and $20,000 in out-of-pocket expenses to be reasonable).

The second red flag is raised when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee. *Kaupelis*, 2021 WL 4816833, at *10. "A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *Briseño*, 998 F.3d at 1026–27. Although Lalli's Motion for Attorneys' Fees went unopposed, the Settlement Agreement has no clause explicitly requiring First Team to refrain from challenging a fee request.[46] Additionally, the Settlement Agreement includes language making it binding on the parties, even if the Court declines the requested attorneys' fees.[47] Therefore, the second flag is not triggered.

Lastly, the third flag is raised when the agreement contains a "kicker" or "reverter" clause that "returns unawarded fees to the defendant, rather than the class." *Kaupelis*, 2021 WL 4816833, at *10. Here, the Settlement Agreement contains a clause that returns unclaimed monies to First Team:

> To the extent that any checks to Settlement Class Members expire
> and become null and void, the Settlement Administrator shall make
> a second distribution of the funds associated with uncashed checks
> on a pro rata basis to Settlement Class Members who submitted an
> Approved Claim and who cashed their checks, if doing so is
> administratively and economically feasible (i.e., those Settlement
> Class Members would receive a second distribution of more than $5

---

[46] *See generally id.*

[47] *Id.* at ¶ 6.2.

1        after costs of administration). ***Any remaining monies, up to the costs***
2        ***of notice and administration, shall then be returned to Defendant***.
3        Any remaining monies after reimbursement of the costs of notice and
4        administration shall be distributed to the National Consumer Law
5        Center.[48]

6 During the hearing, Class Counsel estimated that the costs of notice and

7 administration could be about $73,000.  The Court interprets that estimate to

8 mean that the maximum amount that First Team could recoup is 15% of the

9 settlement fund, assuming that those monies are not first claimed by class

10 members.

11       Also, because the Court understands that this clause is triggered only

12 when class members have not claimed their funds, it is one step removed from

13 any decision of this Court declining to grant (or otherwise reducing) attorneys'

14 fees.  Therefore, this clause, as understood, is not as immediately concerning as

15 a true "kicker" clause where First Team would receive any difference in funds

16 from a Court-ordered reduction in the agreed-upon attorneys' fees.  *See*

17 *Westfall*, 2021 WL 4206851, at *5 (distinguishing the settlement agreement at

18 bar, where any fees not awarded to class counsel reverted to the class, from the

19 settlement agreement in *Briseño* that reverted to the defendant).  In conclusion,

20 none of the *Briseño* flags is clearly raised.

21              **iv.**    **Agreement Identification Requirement**

22       The Court must also evaluate any agreement made in connection with the

23 proposed Settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).  Here, the

24 Settlement Agreement presently before the Court is the only agreement.  Thus,

25 the Court need not evaluate any additional agreements outside of the Settlement

26

27

28   [48]     *Id.* at ¶ 8.4 (emphasis added).

1  Agreement.  *Accord Alvarez*, 2021 WL 1234878, at *8.  Thus, all four prongs

2  under Rule 23(e)(2)(C) favor granting final approval.

3                    **d.    Equitable Treatment of Class Members**

4            The final Rule 23(e)(2) factor turns on whether the proposed settlement

5  "treats class members equitably relative to each other."

6  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the

7  apportionment of relief among class members takes appropriate account of

8  differences among their claims, and whether the scope of the release may affect

9  class members in different ways that bear on the apportionment of relief."

10 Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

11           As discussed in the prior Order, the Court finds the treatment of the class

12 members to be equitable because each class member must submit the same claim

13 form and because the settlement funds will be distributed based upon the

14 number of telephone calls class members received.[49]  Moreover, the requested

15 $5,000 service fee for Lalli—discussed below, *see infra* Part III.A.—does not

16 disturb that finding, in view of the evidence submitted speaking to his level of

17 involvement through discovery and litigation.  Therefore, this factor weighs in

18 favor of granting final approval.

19                    **e.    Traditional Ninth Circuit Factors**

20           Having found that all four factors under revised Rule 23(e)(2) favor

21 granting final approval, the Court now turns to the factors that the Ninth Circuit

22 has traditionally used to evaluate the fairness of a settlement agreement, in order

23 to conduct a sanity check.

24                         **i.    Strength of the Plaintiff's Case**

25           "An important consideration in judging the reasonableness of a

26 settlement is the strength of plaintiffs' case on the merits balanced against the

27

28   [49]    Order Granting Preliminary Approval 14:1-5.

amount offered in the settlement." *Vasquez*, 266 F.R.D. at 488.  The proposed settlement is "not to be judged against . . . what might have been awarded in a judgment in favor of the class." *Id.*  This factor is generally satisfied when plaintiffs overcome barriers to make their case.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Lalli asserts that "counsel has taken into account the strength of Defendant's defenses" and "difficulties in obtaining class certification and proving liability."[50]  However, Lalli does not elaborate any further.  Moreover, because the parties did not file motions to dismiss or motions for summary judgment, the Court lacks firsthand exposure to the true strengths and weaknesses of the parties' respective positions.  Accordingly, the Court finds that this factor does not support final approval because Lalli has not offered anything meaningful for the Court's consideration.

### ii. Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement.  *See Officers for Justice*, 688 F.2d at 625.  Because this factor closely mirrors the requirement in Rule 23(e) concerning "the costs, risks, and delay of trial and appeal," the Court finds that it need not duplicate its analysis.  Fed. R. Civ. P. 23(e)(2)(C)(i); *see also id.*, 2018 Advisory Comm. Notes (noting that many of these factors "focus on comparable considerations").  As discussed above, *see infra* Part II.C.2.c.i., this factor weighs in favor of granting final approval.

---

[50]   Motion for Final Approval 9:17-19.

### iii.    Risk of Maintaining Class Action Status through Trial

Although the Court had preliminarily certified the class, the certification was for settlement purposes only.[51]  An "order that grants or denies class certification may be altered or amended before the final judgment." Fed. R. Civ. P. 23(c)(1)(C).

Lalli argues that this third factor weighs in favor of approval because "[First Team] opposed [Lalli's] motion for class certification and argued that consent and other defenses could not be determined on a class basis, and that, therefore, class certification was inappropriate."[52]  The Court agrees with Lalli that First Team's opposition posed a risk to maintaining the class through trial. Accordingly, this factor weighs in favor of final approval.

### iv.    Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount offered.  "Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625.  Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

Here, the parties agreed to settle all claims for a total sum of $478,500.[53] That figure equates to more than $110 per class member.[54]  Accordingly, the

---

[51]    Order Granting Preliminary Approval 20:2-20

[52]    Motion for Final Approval 10:15-18.

[53]    Second Kaufman Declaration ¶ 2.

[54]    *Id.*  Additionally, at the hearing, Class Counsel explained that the amount available per class member was revised upward from $100 to $110, because the

Court continues to find that the Settlement Amount is appropriate.  *See Estrada v. iYogi, Inc.*, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (approving a $40-per-member recovery in a TCPA case).  In view of the risks of continued litigation and the substantial recovery for the Class, this factor favors final approval of the Settlement Agreement.  *See Aarons v. BMW of N. Amer., LLC*, 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members will "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor).

### v.    Extent of Discovery and Stage of Proceedings

The fifth and six factors require the Court to gauge whether Lalli had sufficient information to make an informed decision about the merits of his case. *See In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000).  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases."  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

Class Counsel argue that "significant fact and expert discovery were completed when the Parties reached Settlement."[55]  First Team produced "more than ten thousand pages of documents," which Lalli reviewed.[56]  Lalli also engaged in third-party discovery, which produced "thousands of additional

---

parties expected slightly fewer claims to be submitted.  *Compare id. with* First Kaufman Declaration ¶ 2.

[55]    Motion for Final Approval 12:14-15; Second Kaufman Declaration ¶ 11.

[56]    Second Kaufman Declaration ¶ 4.

pages of electronic documents relevant to this action."[57]  That production gives
the Court confidence that Lalli had enough information to make an informed
decision about the settlement.  *See Young*, 2007 WL 951821, at *4.  Additionally,
because the parties underwent supervised negotiations with a mediator, the
Court has further reason to conclude that Lalli and First Team possessed "a
clear view of the strengths and weaknesses of their cases."  *Vasquez*, 266 F.R.D.
at 489 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745
(S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).  As such, those factors
weigh in favor of granting final approval of the Settlement Agreement.

### vi.    Experience and View of Counsel

The seventh factor that the Court considers is the experience of counsel,
as "[t]hey are the ones who are most closely acquainted with the facts of the
underlying litigation."  *Vasquez*, 266 F.R.D. at 489.  "Parties represented by
competent counsel are better positioned than courts to produce a settlement
that fairly reflects each party's expected outcome in litigation."  *In re Pac.
Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  However, while counsel's
views are instructive, they do not entitle the plaintiff to a presumption of
fairness.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir.
2019).

Here, Class Counsel has experience handling TCPA class action cases.[58]
The Court is satisfied that their experience has allowed them to evaluate the
merits of the claims and risks associated with prosecuting them.  Class Counsel
also staunchly support the final outcome as fair and reasonable.[59]  The Court
accordingly credits Class Counsel's determination and finds that this factor
weighs slightly in favor of final approval.

---

[57]    *Id.*

[58]    *Id.* at ¶¶ 13-17.

[59]    *See generally* Motion for Final Approval.

1
2

          **vii.**    **Reaction of the Class Members to the Proposed
Settlement**

3
4
5
6
7
8
9
10
11
12
13
14

In evaluating the fairness, adequacy, and reasonableness of the settlement, the eighth factor that courts consider is the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement"). Here, no Class Members have objected to or opted out of the Settlement Agreement.[60] That fact weighs strongly in favor of final approval.

15

          **viii.**   **Presence of a Governmental Participant**

16
17
18

Lastly, because no government entity participated in this case, the final factor is irrelevant. *See Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426, at *9 (C.D. Cal. July 7, 2015), *aff'd* (Dec. 9, 2015).

19

          **3.**    **Conclusion on Final Settlement Approval**

20
21
22
23
24

In conclusion, the majority of factors used to assess the adequacy, fairness, and reasonableness of a class settlement—whether they are Ninth Circuit factors or factors prescribed to the Court under Rule 23(e)(2)—all point in favor of granting final approval. Therefore, the Court **GRANTS** the Motion for final approval of the Settlement.

25
26
27
28

---

[60]    Second Kaufman Declaration ¶ 12.

### III.  ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD

#### A.    Service Award

Class Counsel request that this Court grant an incentive reward to Lalli for serving as the class representative.  Service awards, also known as "[i]ncentive awards," are "fairly typical" in class action cases.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  They are discretionary in nature and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and . . . to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.

Class Counsel state that Lalli took "personal time to seek out and speak with Class Counsel, search for relevant evidence, review and approve the complaint for filing, respond to discovery, prepare for and attend his deposition, keep apprised of the progress of the litigation, attend mediation and participate in the settlement negotiations, and, ultimately, provided his input and approval for the class action settlement of the case presented to the Court for approval."[61] For that effort, Class Counsel ask for a $5,000 award.  "Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."  *Lee v. Glob. Tel\*link Corp.*, 2018 WL 4625677, at \*12 (C.D. Cal. Sept. 24, 2018) (TCPA case); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at \*19 (C.D. Cal. Feb. 16, 2017) (finding a $5,000 award reasonable for class representatives' participation throughout the litigation and the risk to their reputation).  In view of Lalli's extensive engagement in this litigation, the Court agrees and finds a $5,000 service award fair and reasonable.  Accordingly, the Court **GRANTS** the Motion approving $5,000 as a service award for Lalli and **DIRECTS** that it be paid pursuant to the terms of the Settlement Agreement.

---

[61]     First Kaufman Declaration ¶ 13.

**B.    Expenses**

In their briefing papers, Class Counsel state that they incurred costs in the form of filing fees, process server costs, *pro hac* vice fees, deposition transcripts, expert witnesses, third party subpoena production costs, mediation, travel, and postage, totaling $48,579.48.[62]  At the hearing, Class Counsel revised that figure downward to $47,582.69, clarifying that they had been reimbursed $996.79 of their $1,293 travel charge.

Even with this downward revision, though, their request still represents 10% of the Settlement Fund.  The Court expressed some concern that several categories seemed high, such as expert fees ($16,529.46) and third-party subpoena production costs ($13,836).[63]  But Class Counsel explained that many of those out-of-pocket expenses included other pass-through costs on top of hourly rates.

The Court wishes to remind Class Counsel that they should be judicious in their use of resources, especially when incurring expenses to be later billed to the Settlement Fund, as that is in the best interest of the class.  *See Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *11 (C.D. Cal. Oct. 10, 2019) (commending class counsel taking for steps to assure that "only necessary expenses" were incurred for the "vigorous and efficient" litigation of the case).  Notwithstanding the Court's concerns here, the Court finds that those litigation expenses may be reimbursed because they were not wholly unreasonable and because they were incurred to benefit the class.  *See In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989) (noting that attorneys "whose efforts create a common fund for an identifiable class are entitled to recover their fees and costs from the class so

---

[62]    *Id.* at ¶¶ 32 & 33.

[63]    *Id.* at ¶ 32.

benefited"); *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). Accordingly, the Court **GRANTS** the Motion and approves the reimbursement of $47,582.69 to Class Counsel from the Settlement Fund pursuant to the terms of the Settlement Agreement.

## C.  Attorneys' Fees

Under the Settlement Agreement, Class Counsel is permitted to seek the Court's approval of attorneys' fees and any documented and reasonable out-of-pocket expenses.[64]  Previously, Class Counsel flagged that they intended to apply to the Court for attorneys' fees totaling not more than one-third of the Settlement Fund.[65]  They have requested approval of attorneys' fees totaling $159,500, which indeed represents one-third of the settlement fund.[66]

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" when determining the reasonableness of a request for attorneys' fees.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Each method is discussed below.

### 1.  Percentage-of-the-Recovery Method

Applying the percentage-of-recovery method, courts typically calculate "25% of the fund" as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure.  *Id.*; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).

---

[64]    Settlement Agreement ¶ 6.1.

[65]    Motion for Preliminary Approval 10:17-19.

[66]    Motion for Attorneys' Fees 8:4-6.

Here, Lalli requests that the Court approve a fee award equivalent to one-third of the settlement amount.  Because that request departs from the 25% benchmark, the Ninth Circuit instructs the Court to consider five factors to determine whether the fees reasonably compensate counsel for their efforts in creating the common fund:  "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).  "The mere fact that the defendant agrees to pay the fees does not detract from the need to carefully scrutinize the fee award."  *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *5 (C.D. Cal. Dec. 21, 2017) (internal quotations omitted).

### a.  Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *Omnivision*, 559 F. Supp. 2d at 1046. Class Counsel argue that the results in this case were exceptional.  They point to the $478,500 non-reversionary fund as a justification.[67]  Members of the class here may expect to receive approximately $110.[68]

The Court makes four observations.  First, the total dollar figure is sizeable but not exceptional.  In an era where seven- or eight-figure settlements are becoming more common, a six-figure settlement does not appear exceptional on its face.  *See, e.g.*, *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 621 (8th Cir. 2017) ($15 million settlement in a TCPA dispute); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 941 (D. Minn.

---

[67]   *Id.* at 10:12-15.

[68]   *Id.*; *see also* Second Kaufman Declaration ¶ 2.

2016) ($12.5 million settlement for TCPA violations).  Indeed, Class Counsel even cite seven TCPA class actions that they themselves litigated in which the settlement figure exceeded the sum at issue here.[69]  Five of those cases had settlement figures in the millions.[70]  It would appear, then, that a settlement under $500,000 is not even exceptional as far as Class Counsel's own firm goes.  Second, on a per capita level compared with other TCPA cases, the Court again finds that $110 per class member is a strong result, but not necessarily exceptional.  *See, e.g.*, *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *5 (N.D. Cal. Mar. 26, 2019) (collecting TCPA cases in which average recoveries have ranged from $151 to $500 per class member).  Third, the Court sees no evidence that "counsel pursued this case in the absence of supporting precedents" or "in the face of agreements signed by the class members forsaking benefits"—the presence of which influenced other courts to deem a settlement outcome exceptional.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048.  The TCPA is not a novel statute, and class action lawsuits arising under it are not new.  *See, e.g.*, TCPA Litigation:  Key Issues and Considerations, Practical Law Practice Note 4-613-7306.  However, the Court does acknowledge that Class Counsel faced legal ambiguity with the decision pending in *Facebook*, which was not decided at the time of the parties' mediation or subsequent negotiations.  On balance, those findings suggest that the Class Counsel achieved a strong result for the class, but not necessarily an exceptional one.  This factor does not justify departing from the Ninth Circuit's 25% benchmark.

### b.    Risk of Litigation

Class Counsel argue that the award is justified in view of the risk of further litigation.  Here, the Court agrees.  "The risk that further litigation

---

[69]    Second Kaufman Declaration ¶ 17.

[70]    *Id.*

might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47. The Court looks at how continuing the litigation could jeopardize chances of recovery, as well as the complexity of the legal issues involved. *See Vizcaino*, 290 F.3d at 1048 (finding continued litigation posed a significant risk where the plaintiffs had already lost twice in the district court—once on the merits, once on the class definition—and twice counsel succeeded in reviving their case on appeal); *Thomas v. Dun & Bradstreet Credibility Corp.*, 2017 WL 11633508, at *19 (C.D. Cal. Mar. 22, 2017).

In view of the legal ambiguities with a pending decision in *Facebook*, Class Counsel were under the clock to settle or potentially to face a precluded claim, thereby recovering nothing. *See Thomas*, 2017 WL 11633508, at *19 (noting that there was a risk that the "relevant provision of the TCPA [would] not apply" to calls the plaintiff's business received). Accordingly, this factor weighs in favor of granting the requested fees.

### c. Skill Required and Quality of Work

The Court next considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See Omnivision*, 559 F. Supp. 2d at 1047. A fee award of one-third of the settlement fund is justified where class counsel "has significant experience in the particular type of litigation at issue." *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *3 (C.D. Cal. Sept. 18, 2020), *appeal dismissed*, 2021 WL 1546069 (9th Cir. Feb. 16, 2021) (awarding 33% of settlement fund where the law firm "actually pioneer[d] complex ERISA 401(k) excessive fee litigation").

Class Counsel aver that they have worked on TCPA class actions since 2008 and have successfully litigated many such lawsuits.[71] They boast a strong

---

[71]    *Id.* at ¶¶ 16 & 19.

résumé.  However, because the action here never went to trial and motion practice was limited, the Court had little opportunity to gauge Class Counsel's performance first-hand.  *Cf. Boyd v. Bank of Am. Corp.,* 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (noting that the attorneys' "experience was demonstrated . . . over 3,000 hours litigating the case"); *Omnivision*, 559 F. Supp. 2d at 1047 (observing that plaintiffs' counsel "survive[] two motions to dismiss").  Furthermore, the Court has little insight into the mediation process and any skill demonstrated therein.  Class Counsel submit no evidence from any party or participant in the litigation, for example, attesting to Class Counsel's exceptional skill or performance.  Therefore, the Court finds that this factor is neutral, since the Court lacks sufficient exposure to the attorneys' overall performance needed to affirm higher fees.

### d.    Contingent Nature of the Fee

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).  As such, departing from the benchmark 25% may be warranted when attorneys work on a contingency basis, especially for protracted periods of time.  *See Vizcaino*, 290 F.3d at 1050.

Here, Class Counsel aver they worked on a contingency fee basis and invested nearly $50,000 in upfront costs.[72]  While it is not clear when the attorneys began work precisely, it is clear from the docket that this lawsuit began in January 2020 and that the events at issue—*i.e.*, the auto-dialing—transpired as late as July 2019.[73]

---

[72]    First Kaufman Declaration at ¶¶ 34 & 35.

[73]    *See* Complaint ¶ 51.

-27-

Taking those facts into account, the Court finds that Class Counsel
certainly took on risk, but that the risks were not as great as other cases where
courts concluded that an upward departure from the benchmark was warranted.
On one hand, because Class Counsel took the case on contingency, they
inherently faced the risk of walking away with nothing after investing substantial
resources in this matter.  That fact favors an upward departure.  On the other
hand, cases where this factor justifies upward departure tend to endure far more
protracted lawsuits.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 (finding a 28%
contingency fee was warranted where the lawsuit "extended over ***eleven*** years,
entailed hundreds of thousands of dollars of expense, and required counsel to
forgo significant other work, resulting in a decline in the firm's annual income")
(emphasis added); *Omnivision*, 559 F. Supp. 2d at 1047 (lawsuit spanned three
years and lawyers worked "***7,500 uncompensated hours***") (emphasis added).
Here, the case had not yet even turned two years old at the time of the hearing.
The three attorneys comprising Class Counsel also say that they have invested
only a little more than 300 hours in total, which equates to about two-and-a-half
40-hour work weeks per attorney.[74]  In view of those facts, this factor weighs
against granting an upward departure.

### e.    Awards Made in Similar Cases

The requested award in this settlement is somewhat higher than awards
authorized in similar cases, but the recovery of approximately $110 per
participating class member is also higher.  *See Cabiness*, 2019 WL 1369929, at *8
(awarding 30% of the common fund in TCPA case where average per-class-
member recovery was $33.36); *Gergetz v. Telenav, Inc.*, 2018 WL 4691169, at *7
(N.D. Cal. Sept. 27, 2018) (finding request for 33% of the common fund to be
"slightly overreaching" and awarding 30% instead); *Izor v. Abacus Data Sys.*,

---

[74]    Motion for Attorneys' Fees 13:21-24.

2020 WL 12597674, at *10 (N.D. Cal. Dec. 21, 2020) (granting "30% of the total settlement" in lieu of requested 33%).  The Court concludes, then, that similar cases establish that ***some*** upward departure from the benchmark may be appropriate, although not to the extent that Class Counsel requests here.

### 2. Lodestar Cross-Check

Under the lodestar method, the Court "multipl[ies] the number of hours the prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941.  Though the lodestar figure is "presumptively reasonable," the Court may adjust it upward or downward reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42.

Here, the Class Counsel worked slightly more than 313 hours.  Rates of $800/hour, $730/hour, and $730/hour for Avi Kaufman, Rachel Kaufman, and Stefan Coleman, respectively, yield a $240,271 lodestar figure.[75]

| Timekeeper | Hourly Rate | Total hours | Total Lodestar |
|---|---|---|---|
| Avi R. Kaufman | $800 | 161 | $128,800 |
| Rachel E. Kaufman | $730 | 117.5 | $85,775 |
| Stefan Coleman | $730 | 35.2 | $25,696 |
| **Total** | | 313.7 | $240,271 |

Because Class Counsel's request for $159,500 in attorneys' fees comes below their lodestar figure, the Court concludes that it need not conduct a separate analysis to determine if an upward multiplier should be applied.  *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) (noting that the

---

[75] *See* First Kaufman Declaration ¶¶ 26-30.  Class Counsel calculated a lodestar sum of $247,571.  *See* Motion for Attorneys' Fees 16:24-26.

1  "lodestar cross-check is not required in this circuit, and in some cases is not a

2  useful reference point").

3  **3.    Conclusion on Attorneys' Fees**

4  In summary, the Court finds that two of the five factors evaluated in the

5  percentage-of-recovery method justify some upward departure, whereas the

6  other three do not.  Asking for one-third of the Settlement Fund, especially

7  when out-of-pocket expenses already constitute 10% of the class award, seems

8  excessive.  *Gergetz*, 2018 WL 4691169, at *7.  But, upon conducting a lodestar

9  cross-check, the requested fees appear more reasonable, as they constitute only

10  66% of the base lodestar figure.  On balance, the Court concludes that attorneys'

11  fees representing 30% of the settlement fund—or $143,550—is an appropriate

12  award.

13  **IV.  CONCLUSION**

14  For the foregoing reasons, the Court hereby **ORDERS** as follows:

15  1.    The Motions are **GRANTED**.

16  2.    Judgment will issue accordingly.

17  **IT IS SO ORDERED.**

18

19  Dated:___September 6, 2022___                                    _____

20                                                                        John W. Holcomb
                                                                        UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28